UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


MICHAEL T. USZAK,                        )        CASE NO.  1:06CV837
                                         )
               Plaintiff,                )        JUDGE CHRISTOPHER A. BOYKO
                                         )
     vs.                                 )
                                         )
YELLOW TRANSPORTATION, INC.,             )        OPINION AND ORDER
et al.,                                  )
               Defendants.               )


CHRISTOPHER A. BOYKO, J.:

        This matter comes before the Court upon the Motions for Summary Judgment of

Plaintiff Michael T. Uszak ("Uszak") (ECF DKT #144); Defendant Yellow Transportation,

Inc. ("Yellow") (ECF DKT #135); and Defendant Truck Drivers Union Local 407 ("Local

407") (ECF DKT #146).  For the following reasons, Defendants' Motions for Summary

Judgment are granted and Plaintiff's is denied.  Further, the remaining claims, sounding in

Assault against Defendant Curtis Castle and Intentional Tort against Defendant Yellow

Transportation, Inc., are state claims.  Since the federal claims are dismissed from the

Complaint, the Court declines to exercise pendent jurisdiction over the purely state actions.

## I. FACTUAL BACKGROUND

This is a hybrid § 301 of the Labor Management Relations Act ("LMRA") of 1947/

Duty of Fair Representation action arising from a fistfight between two union stewards,

Uszak and Castle, which occurred on the premises of their employer, Yellow, on August 7,

2005.  Uszak was a line haul truck driver employed at Yellow's Cleveland terminal located

on Brecksville Road in Richfield, Ohio, from February 26, 1995 through October 9, 2005.

During their employment, Uszak and Castle were members of Local 407, affiliated with the

International Brotherhood of Teamsters.  The terms of their employment were governed by

the National Master Freight Agreement ("NMFA"), the multi-employer, nationwide union

contract of which Yellow is a signatory.  Article 46 - DISCHARGE OR SUSPENSION - of

the NMFA covering the period from April 1, 2003 through March 31, 2008 provides as

follows:

> Subject to the provisions of Article 8 of the Master Freight Agreement, the Employer *shall not discharge nor suspend* any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the complaint against such employee to the employee, in writing, and a copy of the same to the Local Union and job steward affected, except that, no warning notice need be *given to an employee before he is discharged* if the cause of such discharge is proven dishonesty or intoxication, which may be verified by an alcohol or drug test.  Refusal to take an alcohol or drug test shall establish a presumption of intoxication.  Extension of a coffee break or lunch period for a minimal amount of time *shall not be considered dishonesty per se* and *will require* at least one (1) warning notice prior to discharge or suspension.  Prior warning notice is not required if the cause of discharge is drug intoxication as provided in Article 35, Section 3, of the Master Freight Agreement; the possession of controlled substances and/or drugs *either while on duty or on company property*; that an employee has intentionally committed malicious damage to the Employer's equipment or property; that an employee has intentionally *abandoned his equipment*; proven sexual harassment; recklessness resulting in serious accident while on duty; carrying of unauthorized passenger; failure to report any accident which the employee is aware of; failure to meet the minimum requirements for safe driving under Paragraph 391.25 fo the Motor Carriers Safety Regulations issued by the Department of Transportation; or unprovoked physical assault on a company

supervisor while on duty or on company property. (Italics provided in original). In addition, Yellow issued a Policy Guide to Workplace Conduct in June of 2004, which included a Workplace Threats and Violence Policy, providing that "threats of violence, words or deeds that contain a threat of violence or violent acts by an employee toward a co-worker, customers or the public will not be tolerated."  Further: "Any person who engages in prohibited conduct on Company property may be removed from Company property pending the outcome of an investigation.  Violations of this policy will lead to disciplinary action up to and including termination and may be reported to appropriate law enforcement authorities." Uszak admits receiving a copy of the Policy.  Local 407 responded to the distribution of the Yellow Workplace Policy on July 26, 2004:

> This Local Union understands that Yellow Transportation has the right to publish and distribute company policies to its employees, but I wish to point out that the bargaining unit is covered by the terms and conditions of the NMFA, and that by signing to receipt of the policy guide does not bind those employees to any conditions outside the parameters of the NMFA. (Plaintiff's Appendix "V").

Rodney Boothe, the Labor Relations Manager for Yellow Transportation, testified on deposition about the Workplace Policy and its interaction with the NMFA supplements and riders.  Boothe identified the NMFA for 2003-2008; and indicated the complete document included the Ohio Rider.  (Boothe Depo. pp. 48, 52).  With regard to discharge or suspension, the rider provides: "Violations on the part of the employee, member of the Union, of the rules and regulations of the Employer . . . shall be considered cause for disciplinary action . . ." (Boothe Depo. p.48).  Moreover, Boothe testified that an Ohio bulletin came out in the early 1980's, which clarified that a hearing between the parties replaced the necessity for a warning letter prior to termination.  (Boothe Depo. pp. 57-58).  Boothe was unaware of any more

-3-

recent publications; but he emphasized that the warning letter was no longer the procedure in

Ohio.  Uszak points to Article 2, Section 5 of the NMFA, which recites in pertinent part:

> Upon the effective date of this Agreement, all existing or previously adopted Riders which provide less than the wages, hours, and working conditions specifically established by this Agreement and Supplemental Agreements shall become null and void.  Thereafter, the specific provisions of this Agreement and applicable Supplemental Agreements shall apply without being subject to variance by Riders.

On August 7, 2005, Uszak and Castle became embroiled in a heated telephone

discussion over alleged NMFA violations by another member of Local 407.  The argument

continued and escalated into a physical altercation when Castle confronted Uszak at the

terminal that afternoon.  There were no witnesses to the incident and no images from the

event were found on Yellow's video surveillance system; so, the facts must be pieced together

from the statements of the participants and from the report of the Richfield Police

Department.  Castle said Uszak spit in his face; so, he instinctively punched him and stepped

back.  According to Castle, Uszak charged at him and knocked him to the ground, causing

him to hit his head.  Then, he was repeatedly kicked and punched by Uszak.  For his part,

Uszak denies spitting in Castle's face.  Rather, Castle approached and immediately began

punching Uszak.  Uszak admits hitting and kicking Castle; but insists his actions were in self-

defense.  While Castle was on the ground, and though his vehicle was nearby, Uszak did not

attempt to retreat or flee to a safe place.  After the police took their statements, both men were

taken to the hospital where they were treated and released.

Upon learning of the fight, Boothe, on behalf of the company, reviewed the police

reports and the preliminary medical records. Yellow determined, regardless of which man

started it, both were engaged in a fight on company premises.  Both Uszak and Castle were

discharged, effective August 9, 2005.

In order to contest the validity of an employment termination, a union employee must file a grievance.  According to Yellow's practice, the parties meet for an information exchange/hearing, where the employee and his union representatives have the opportunity to present facts and evidence, and the employer presents support for its disciplinary action as well.  If the employer does not agree to reinstate the employee, the local union has the right to pursue a hearing before the Ohio Joint State Grievance Committee ("Committee") which convenes in Columbus, Ohio.  The Committee is composed of three Teamsters representatives (not a member of the local union involved) and three unrelated industry employer representatives.  If a majority decision is reached by the Committee, that decision is final and binding on the parties.

Uszak and Castle had separate informational exchange meetings with the Company on August 18, 2005; but Yellow did not reverse its decision to terminate either employee.  Both Uszak and Castle filed grievances, and the business agent for Local 407, Jesse Woody, pursued the grievances on their behalf to the Ohio Joint State Grievance Committee.

Woody met with Uszak on October 10, 2005 in preparation for the Committee hearing scheduled for October 12, 2005 in Columbus.  Woody testified he did not seek a postponement; and Uszak did not request a "hold" on the Committee hearing pending a determination of the criminal proceeding against Castle in Akron Municipal Court.  (Woody Depo. pp. 74-75).  Before the Committee, Woody made arguments as to the nature of the fight — that Castle was the aggressor and Uszak was defending himself.  On behalf of Uszak, Woody presented a written statement of one Thomas Mack, describing the three-way

-5-

conversation that "precipitated" the physical altercation; the investigative report by the Richfield Police Department; Plaintiff's written statement to the Richfield Police Department; and statements from two other Yellow employees regarding prior verbal altercations with Castle.

Uszak informed the Committee that he was dissatisfied with his representation by the union; and his request was granted to read a statement prepared by his attorney into the record. He said his union representative failed to call an important witness; failed to conduct a meaningful investigation of the incident; denied him the right to have his attorney present his case and cross-examine witnesses; failed to inform the Committee that Castle was charged criminally, while Plaintiff was not; and did not argue to the Committee that Article 46 of the Master Agreement does not provide for discharge without written prior warning for fighting between co-employees. Upon consideration of all the evidence presented, the Committee upheld Yellow's termination decision. A separate hearing panel similarly upheld the decision to terminate Castle. Under the terms of the NMFA, the discharge became final and binding. The instant lawsuit was initially brought in April of 2006. On July 17, 2006, the First Amended Complaint, for breach of the collective bargaining agreement/breach of the duty of fair representation was filed against Yellow Transportation and Local 407. Plaintiff, as well as Defendants, Yellow Transportation and Local 407, have moved for summary judgment in their favor.

## II. LAW AND ANALYSIS

### Standard of Review

### Motion for Summary Judgment

A summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See, Fed. R. Civ. P. 56(c).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347; *Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616, at *2 (E.D. Tenn. Dec. 12, 2005). This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323; *Lee*, 2005 WL 3369616 at *2.

**Hybrid § 301 Claim**

An individual employee may bring a suit against his employer for breach of a collective bargaining agreement. *Smith v. Evening News Assn*., 371 U.S. 195 (1962). However, the employee is first required to exhaust any grievance or arbitration remedies available to him. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 655 (1965). This worked an inequity in situations in which the union representing the employee in the grievance/arbitration procedure acted "in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Vaca v. Sipes*, 386 U.S. 171, 186 (1967); *Hines v. Anchor Motor Freight, Inc*., 424 U.S. 554, 565 (1976); *Wessel v. The Goodyear Tire & Rubber Co.*, No. 3:01CV7514, 2002 WL 31728959 at*5 (N.D. Ohio, Nov. 21, 2002). Consequently, the Supreme Court recognized the employee's right to bring suit against both the employer and the union, regardless of the outcome or finality of the grievance or arbitration proceeding. *Del Costello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164 (1983). Such a suit is labeled a "hybrid § 301" claim.

> Such a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act. Yet the two claims are inextricably interdependent. "To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach-of-contract suit under § 301 ... but a hybrid § 301/ fair representation claim... .

*Del Costello*, 462 U.S. at 164 (*quoting United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 66-67 (1981)) (Stewart, J. concurring in judgment) (*quoting Hines*, 424 U.S. at 570-71).

Furthermore, the Sixth Circuit likewise recognizes a hybrid § 301 action "involves two

-8-

constituent claims: 1) breach of the duty of fair representation by the union; and 2) breach of a collective bargaining agreement by the employer.  *Bagsby v. Lewis Bros., Inc. of Tennessee*, 820 F. 2d 799 (6th Cir. 1987); *Wessel*, No. 3:01CV7514, WL 31728959 at *6.

**Breach of the Duty of Fair Representation**

A breach of the duty of fair representation occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."  *Vaca*, 386 U.S. at 190. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational."  *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991).  "The employee need not necessarily show bad faith, yet mere negligence or mistaken judgment is insufficient to establish a breach of the union's duty."  *Poole v. The Budd Co.*, 706 F. 2d 181, 183 (6th Cir. 1983).  The Court is obligated to assess "the Union's undoubted obligation, as the statutory and contractual agent of the employee, to represent his interests honestly and in good faith, and thus to refrain from discriminatory conduct which effectively prevents the employee from pursuing his legitimate claim that the employer breached the contract."  *Whitten v. Anchor Motor Freight, Inc.*, 521 F. 2d 1335, 1342 (6th Cir. 1975).  "[F]ailure to raise certain arguments on behalf of grievants or even take the case to arbitration, even if amounting to negligence or poor judgment does not, without more, constitute a breach of the duty of fair representation."  *See Poole*, 706 F. 2d at 183. Significantly, in the Sixth Circuit, evidence the union acted in bad faith or arbitrarily or discriminatorily is still not enough; because the plaintiff "must also prove that the Union's actions tainted the grievance procedure such that the outcome was more than likely affected

by the Union's breach."  *Dushaw v. Roadway Express, Inc.*, 66 F. 3d 129, 132 (6th Cir. 1995).

Plaintiff Uszak contends he was not fairly represented by Mr. Woody at the Committee hearing.  He claims he was denied the assistance of his attorney at the hearing; prevented from conducting a full investigation; and prohibited from presenting witnesses in his behalf.  He insists the Union acted in bad faith and in an arbitrary manner by failing to press compliance with the Agreement's requirement of a warning letter prior to discharge for fighting with a co-worker on Company premises.

The excerpted record of the Committee proceedings (ECF DKT # 147-7) reveals the joint body of union and employer representatives considered all of Plaintiff's complaints after hearing his prepared statement and his own testimony and/or argument. Contractually, an attorney is not permitted to represent the employee.  Other than the participants, Uszak and Castle, there were no witnesses to the incident.  The Committee only had the statements of the employees and the police reports to try to establish who was the aggressor and whether either employee's actions were in self-defense.  Written witness statements were provided by Uszak; but they were disregarded largely because they were remote in time and considered irrelevant.  The position of Yellow Transportation showed the Company had a "no tolerance" policy toward workplace violence; and for years, the practice in Ohio was to conduct informational exchange meetings in lieu of issuing warning letters to the disciplined employee.

Even though there may be some question of the validity of the Ohio practice, in the absence of a written rider to the 2003-2008 Agreement, Woody's failure to bring up the warning requirement "amounted to mere negligence or a mistake in judgment for which the

Union cannot be held liable." *Dirring v. Lombard Brothers, Inc*., 619 F. Supp. 911 (D.C. Mass. 1984), *citing Findley v. Jones Motor Freight, Inc*., 639 F. 2d 953, 960 (3rd Cir. 1981). Further, the Agreement, binding Local 407 and Yellow, excepts from the warning requirement instances of "recklessness resulting in serious accident while on duty." The Union could maintain that Uszak's conduct was such recklessness, constituting "just cause"; and the Union is not obliged to share an employee's interpretation of the contractual language.

The record is devoid of convincing evidence that the Union did not conduct an adequate investigation; did not handle Plaintiff's grievance in good faith; was unreasonable in concluding the "no tolerance" policy meant precisely what it said; was arbitrary or capricious in accepting the long-standing Ohio policy of conducting meetings rather than issuing warning letters; or that the entire process was tainted by the actions of the Union on Uszak's behalf.

**Breach of the Collective Bargaining Agreement**

Uszak claims his termination by Yellow breached Article 46 of the NMFA, because he received no warning notice prior to his disciplinary discharge. As noted previously, Yellow announced its Policy on workplace violence in 2004 and Uszak received a copy and participated in training on the Policy. The Policy, in essence, recites that threats of violence or violent acts by an employee toward a co-worker, customer or the public will not be tolerated and that such conduct will lead to discipline, including termination. Further, the NMFA in effect at the time of the incident involving Uszak and Castle provided for discharge without prior warning notice for "recklessness resulting in serious accident while on duty."

-11-

The testimony of Yellow's Labor Relations Manager, Rodney Boothe, establishes the employer's understanding that Uszak was discharged for just cause; and that, in Ohio, warning letters prior to discharge have been replaced by informational exchange meetings. "This court will not second guess defendant's [sic] about which conduct is so severe or pervasive as to require discharge."  *Wessel*, No. 3:01CV7514, WL 31728959 at *9. Moreover, this Court will not question the employer's belief that a meeting between employee and employer, with an opportunity to address the accusations and to present respective positions, is a reasonable substitute for the warning notice provided for in the collective bargaining agreement.  In fact, courts most likely would view this informational exchange meeting mechanism as superior to the one-sided warning notice procedure.

 "The question of interpretation of the collective bargaining agreement is a question for the arbitrator [the Committee].  It is the arbitrator's [Committee's] construction which was bargained for; and so far as the arbitrator's [Committee's] decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."  *United Steelworkers of America v. Enterprise Wheel and Car Corp*. 363 U.S. 593, 599 (1960) (*referencing United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960).

## III. CONCLUSION

Since Plaintiff Uszak is unable to satisfy his evidentiary burden of demonstrating the Union Local 407 breached its duty of fair representation or the employer Yellow breached the collective bargaining agreement (NMFA), his hybrid § 301 claim fails.  Uszak makes a claim in his Fifth Count for punitive damages.  In light of this ruling, the Court need not consider the merits of the punitive damages claim against Yellow and Local 407; and is left with Uszak's  state claims for assault, intentional tort, negligence and loss of consortium, over which the Court declines to exercise pendent jurisdiction.  Therefore, upon consideration of

-12-

all the briefs, arguments, evidence, and applicable law, the Motion of Defendants, Yellow

Transportation and Teamsters Local 407, for Summary Judgment is granted; the Motion of

Plaintiff, Michael T. Uszak, for Summary Judgment is overruled; and Plaintiff's First

Amended Complaint is dismissed in its entirety.  The Court's refusal to exercise pendent

jurisdiction does not prohibit the Court from ruling on any sanctions warranted by counsel's

previous conduct.

**IT IS SO ORDERED.**

**DATE: June 18, 2007**

> **s/Christopher A. Boyko**
> **CHRISTOPHER A. BOYKO**
> **United States District Judge**